IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

```
CHIEFTAIN ROYALTY COMPANY,       )
                                 )
           Plaintiff,            )
                                 )
v.                               ) No. CIV-11-29-FHS
                                 )
XTO ENERGY, INC.,                )
                                 )
           Defendant.            )
```

**OPINION AND ORDER**

Now before the court for its consideration is the Motion for Class Certification filed on January 6, 2012, by Plaintiff, Chieftain Royalty Company ("Chieftain"). The parties have fully briefed the issues with Defendant, XTO Energy, Inc. ("XTO"), having filed a Response ("XTO's Response") on January 20, 2012, and Chieftain having filed its Reply on January 27, 2012. On February 6, 2012, the Court held a hearing on class certification. Having considered the parties' respective briefs, the arguments presented at the class certification hearing, and the parties' proposed findings of fact and conclusions of law, the Court finds the Motion for Class Certification ("Chieftain's Motion") should be granted with a class certified as requested by Chieftain.

**Background**

XTO is an oil and gas exploration company. In order to explore for and obtain production of oil and gas, XTO enters into leases with mineral interest owners ("lessors"), who grant XTO ("lessee") "the right to explore, drill for, produce and market the hydrocarbons and other products from the leased premises."

1

Affidavit of Daniel T. Reineke ("Reineke Affidavit"), Exhibit A to Chieftain's Motion at 3. In exchange, the lessors receive compensation under the lease and "a continuing fractional interest in the sale of the produced products." Id. It is Chieftain's contention that "[u]nder both the explicit and implicit terms of a typical lease, a lessee/producer is required to perform all work and bear all costs and expenses necessary to produce and market the products from the lessor's mineral estate, including putting the gas in marketable condition (also called marketable gas, residue gas, pipeline quality gas and marketable commodity)." Id. at 3-4.[1] The raw gas at the wellhead contains non-hydrocarbon contaminants (i.e. water vapor, carbon dioxide, hydrogen sulfide, nitrogen, oxygen, helium, dust, and other substances) and hydrocarbons known as "natural gas liquids" (i.e., ethane, propane, normal butane, iso-butane, and natural gasoline, commonly called "NGLs"). Id. at 4. This raw gas, or "wet gas," requires conditioning to eliminate or reduce the contaminants to acceptable limits to make this gas marketable. Id. at 5. This conditioning process initially involves the flow of "the production stream through initial mechanical separators, which separate the raw gas vapor phase from the liquid phase of the stream." Id. If necessary, some initial compression occurs on the lease to allow the gas to enter the gathering system, which "consists of a series of small, low pressure pipelines which typically collect raw gas from multiple wells located within a localized geographical area and deliver the raw gas to a central point for treatment and processing." Id. at 7. Further compression typically takes place on the gathering

---

[1] The fractional interest, or "royalty interest," retained by the lessor is typically between one-eighth and one-quarter, free of costs and expenses, with the lessee typically receiving between three-quarters and seven-eighths of the resulting production, less costs and expenses. Reineke Affidavit at 4.

system as the raw gas is of insufficient pressure to move along the gathering system and into the processing plant. Id. Gas from the wells, or "fuel gas," is used to power the compressor and other equipment on the gathering system. Id. The raw gas within the gathering system is also subjected to a dehydration process where "some of the constituents of the raw gas may condense and drop out of the raw gas stream in the form of liquids (also called "drip liquids," "drip condensate" and "scrubber oil")." Id. These valuable drip liquids "are typically collected at the compressor stations and sold by the operator of the gathering system for his own account." Id. Additional treatment of the raw gas may take place on the gathering system and these services are all spelled out in the Gas Gathering Agreement between the lease operator and the gathering system operator, referred to as a "midstream" company. Id. at 7-8. After passing through the gathering system, the raw gas is then delivered to a treating and/or processing plant, which functions to "(i) transform the low pressure raw wellhead gas into residue gas that is "pipeline quality" gas in order that it may enter the high-pressure interstate pipeline system; and (ii) to extract the NGLs so they can be marketed." Id. These types of services are spelled out in the Processing Agreements entered into with midstream companies.

Chieftain is a royalty owner in numerous XTO wells located in Oklahoma. See Affidavit of Robert S. Abernathy ("Abernathy Affidavit")(Dkt. No. 97). Chieftain has a direct lessor-lessee relationship with XTO in at least two of the XTO wells. Id. and Affidavit of Alyce Hoge, Exhibit D to Chieftain's Motion at 3. At issue in this case with respect to the putative Class members are 2,296 XTO wells. Affidavit of Karissa K. Cottom, Exhibit 1 to XTO's Response. These wells are covered by approximately 14,300 leases from which XTO markets gas. XTO's Response at 3-4.

3

Chieftain asserts that there are in excess of 16,000 royalty owners who qualify as members of the proposed Class. Affidavit of Barbara A. Ley ("Ley Affidavit"), Exhibit B to Chieftain's Motion at 11.

With respect to the majority of XTO's Oklahoma wells, XTO is the operator and it directly markets the gas for itself and other working interest owners. With respect to the remaining Oklahoma wells, XTO separately markets the gas in its role as a non-operator. Chieftain brings this action for itself, and on behalf of the putative Class members, against XTO seeking to recover for XTO's failure to properly pay royalties due on the production of gas and gas constituents from these Oklahoma wells. As set forth in its state court Petition[2], Chieftain asserts theories of recovery for (1) breach of contract, (2) tortious breach of contract, (3) breach of fiduciary duty or quasi-fiduciary duty, (4) fraud (actual and constructive) and deceit, (5) conversion, (6) conspiracy, (7) accounting, and (8) injunctive relief. Chieftain's underlying claim as to all theories of recovery is that XTO has underpaid royalties on gas and gas constituents by improperly deducting costs or fees incurred to transform the wellhead gas into

---

[2] Chieftain's state court Petition was filed in the District Court of Coal County, Oklahoma, on December 17, 2010. On January 21, 2011, XTO removed Chieftain's state court action to this federal court. On April 22, 2011, this Court applied the first-to-file rule and stayed this action pending a ruling from the United States District Court for the District of Kansas in Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., Case No. 08-1330-JTM-KMH ("Roderick"), to allow the Kansas federal court the opportunity to decide whether it would carve out the Oklahoma class in the Roderick case and transfer it to this Court. On June 3, 2011, the Roderick Court severed all claims related to the Oklahoma wells from its case and transferred those claims to this Court. See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., Case No. 11-192-FHS (E.D. Okla.). On June 30, 2011, the transferred Roderick case (Case No. 11-192-FHS) and the instant case were consolidated as related cases.

a marketable condition for sale. According to Chieftain, these improper deductions from the royalty payments include, but are not limited to, the following: "(1) deducting direct and indirect fees for marketing, gathering, compression, dehydration, processing, treatment, and other similar services; (2) not paying royalty on wellhead gas that was used off the lease premises or in the manufacture of products; and (3) not paying royalty on condensate that dropped out of the gas stream." Petition, ¶ 13.

In Chieftain's Motion, it seeks the certification of the following class:

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells since July 1, 2002, where XTO, including its predecessors or affiliates, is or was the operator (or, as a non-operator, XTO separately marketed gas). The Class Claims relate only to payment for gas and its constituents (helium, residue gas, natural gas liquids, nitrogen and condensate) produced from the wells. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.
>
> The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United State of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies and their affiliates; (3) the claims of royalty owners in XTO wells gathered by Timberland and processed at the Tyrone Plant which are presently the subject of the action styled *Fankouser, et al v. XTO Energy, Inc.*, Case No CIV-07-798-L USDC WD OK (formerly *Beer et al v. XTO*); and (5) persons or entities that Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional conduct.

Chieftain's Motion at 43-44.

**<u>Class Certification Principles</u>**

5

When assessing the propriety of a plaintiff's request for class certification, a federal court does not make a determination on the merits of the suit, but rather the inquiry is whether the plaintiff has satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010). Certification is appropriate if "the proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b)." Id.

Under Rule 23(a), a party seeking certification must affirmatively demonstrate that

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In assessing these factors, the court should accept the allegations in the complaint as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements." J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n. 7 (10th Cir. 1999). The certification evaluation requires "the trial court [to be] satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982). On occasion, this "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011), as "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," Falcon, 457 U.S. at 160. The court is invested with broad discretion in resolving the certification

6

issue.  Rector v. City & County of Denver, 348 F.3d 935, 949 (10th Cir. 2003).  An order certifying a class may later be altered or amended before final judgment.  Fed.R.Civ.P. 23(c)(1)(C).

If the court is satisfied that the four threshold requirements of Rule 23(a) have been met, the plaintiff must then come forward and establish that the proposed class meets one of the requirements for certification under Rule 23(b).  Here, Chieftain alleges certification is appropriate under Rule 23(b)(3), which allows a class to be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**Numerosity**

With respect to the numerosity element of Rule 23(a)(1), Chieftain bears the burden of establishing that "the class is so numerous as to make joinder impracticable." Peterson v. Okla. City Hous. Auth., 545 F.2d 1270, 1273 (10th Cir. 1976).  Chieftain asserts the numerosity element is satisfied as the putative class consists of in excess of 16,000 royalty owners scattered throughout Oklahoma and other states.  In XTO's Response, it does not contest Chieftain's argument as to numerosity.  Consequently, the Court finds Chieftain has satisfied the numerosity requirement under Rule 23(a)(1).

**Commonality**

The second prerequisite under Rule 23(a) requires a showing that "there are questions of law or fact common to the class."

7

Fed.R.Civ.P. 23(a)(2). This commonality requirement entails a demonstration that the class members "possess the same interest and suffer the same injury." Falcon, 457 U.S. at 156. A common contention must therefore drive the claims asserted in the litigation. This common contention "must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S.Ct. at 2551. Dissimilarities or factual differences in the claims do not necessarily preclude certification. DG v. Devaughn, 594 F.3d 1188, 1195 (10th Cir. 2010)("Factual differences between class members' claims do not defeat certification where common questions of law exist."). Certification is appropriate upon a finding of "a single issue common to the class." J.B. ex rel. Hart, 186 F.3d at 1288.

At its core, this action involves the application and definition of the implied duty of marketability. Under Oklahoma law, an implied duty to market production is placed on an oil and gas lessee. Wood v. TXO Production Corp., 854 P.2d 880, 882 (Okla. 1993). "[T]he implied duty to market means a duty to get the product to the place of sale in a marketable form." Id. An oil and gas lessee bears all costs associated with turning the raw gas into a marketable product, unless the lease expressly and clearly provides that such costs are to be proportionately borne by the lessor. Mittlestaedt v. Santa Fe Minerals, Inc., 954 P.2d 1203, 1207 (citing Wood, 854 P.2d at 883). Oklahoma law does allow for post-production costs to be charged to royalty owners where the product is in a marketable condition if the lessee can prove that (1) the costs are reasonable, (2) the actual royalty revenues increased in proportion with the costs assessed against the royalty interest, and (3) the costs are associated with transforming an

8

already marketable product into an enhanced product.  <u>Mittlestaedt</u>, 954 P.2d at 1208, 1210.

It is Chieftain's contention that it has satisfied the commonality requirement because "the determination of what processes are necessary to create a 'marketable' product is a common question that will be answered uniformly for all Class members."  Chieftain's Motion at 19.  Tethered to this legal determination is the common factual issue of "[w]hether XTO routinely deducted any costs and expenses, incurred before the products became commercially marketable, from payments that were due and owing to the Class member royalty owners."  <u>Id</u>. at 17.  The Court finds that these common questions are sufficient to establish commonality.

In opposition to Chieftain's commonality argument, XTO contends that there are, in effect, 86 different lease forms involved in this case and, therefore, it does not employ a uniform method of paying Oklahoma royalty owners as the royalty payments are determined by the language of the lease.  XTO also argues that the multiple marketing arrangements it has with the midstream companies affects the determination of amount due to the royalty owners.  The Court rejects these arguments as the evidence before it establishes that XTO operates under a generalized, uniform method of calculating royalty payments by charging royalty owners with deductions for making the gas marketable, without reference to either the individual lease language or marketing arrangements with midstream companies.  <u>See</u> Ley Affidavit at ¶ 10 and Reineke Affidavit at p. 20, ¶F.  In fact, when provided an opportunity to explain XTO's royalty payment system, XTO's designated representative, Joni VanMeter ("VanMeter"), was unable to contest XTO's implementation of a uniform system without reference to

9

individual leases.  VanMeter testified that she did not know how many Oklahoma royalty owners, if any, have been flagged to not have deductions for treating, processing, gathering, compression, and dehydration.  VanMeter Deposition, Exhibit F to Chieftain's Motion, at 80-82 and 150-151.  Additionally, VanMeter could not relate any instances where XTO paid royalty on fuel gas or on drip condensate.  Id. at 151-157.  Thus, the record reflects that XTO employs a uniform royalty payment methodology which does not take into account individual lease language.[3]

In a related context, XTO also argues that a certification of a class in this case would abridge the fundamental rule under the Rules Enabling Act, 28 U.S.C. § 2072(b), that Rule 23 cannot be interpreted to "abridge, enlarge or modify any substantive right." It is XTO's position that certification would prevent it from raising the material terms of the lease agreements in defense of Chieftain's claims.  The Court disagrees.  Contrary to XTO's claim that certification would require the Court to ignore the terms of the various leases, the express terms of the various leases will necessarily have to be evaluated, at the appropriate stage of these proceedings, to determine whether the implied duty of marketability has been abrogated.  XTO's defenses centered on the existence of a duty to create a marketable product, or the scope of such duty,

---

[3] A possible exception to this uniform treatment exists.  For class certification purposes, the parties relied on data from 11 Sample Wells as being representative of XTO's Oklahoma wells.  On one of the wells, the data suggests that a different payment methodology was used, but XTO did not provide any explanation as to why royalty owners were paid differently.  Ley Affidavit, at 11. On another well, "XTO did not provide enough royalty payment data . . . to make this determination" as to calculation of royalty payments.  Id.  The Court finds the uncertainty of the royalty payment methodology as to these two sample wells does not prevent certification in light of the substantial evidence of a uniform policy on the remaining wells.

remain available to XTO in the context of class certification. The Court finds certification will not abridge any substantive right of XTO.

XTO also contends that the Supreme Court's decision in <u>Wal-Mart</u> has implemented a material shift in the class certification analysis requiring the denial of certification in this case. The Court disagrees. <u>Wal-Mart</u> involved a district court's certification of current and former female employees of Wal-Mart who asserted Title VII sex discrimination claims in connection with "the discretion exercised by their local supervisors over pay and promotion matters." <u>Wal-Mart</u>, 131 S.Ct. at 2547. The Supreme Court reversed and held that class certification under these circumstances was not appropriate as there was no common contention which was capable of classwide resolution. In addressing commonality, the Supreme Court stated:

> The only corporate policy that the plaintiff's evidence convincingly establishes is Wal-Mart's "policy" of *allowing discretion* by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices.

<u>Id</u>. at 2554 (emphasis in the original). These facts are vastly different from those involved herein. The discretion afforded Wal-Mart supervisors with respect to employment decisions stands in stark contrast to a uniform policy employed by an oil and gas exploration company for the payment of royalties. <u>Wal-Mart</u> reaffirmed the standard for commonality that all class members suffer a common injury. <u>Id</u>. at 2551. Application of that standard to a factual situation allowing individual Wal-Mart supervisors discretion in making employment decisions does not mandate a

11

similar outcome herein where a uniform royalty payment methodology exists.

In sum, the Court finds the commonality requirement of Rule 23(a)(2) is satisfied as all putative class members "possess the same interest and suffer the same injury," Falcon, 457 U.S. at 156, arising from general issue of the application of the implied duty of marketability and XTO's uniform royalty payment methodology. This commonality finding permeates all claims asserted by Chieftain – breach of contract, tortious breach of contract, breach of fiduciary duty or quasi-fiduciary duty, fraud (actual and constructive) and deceit, conversion, conspiracy, accounting, and injunctive relief[4] – as the underlying basis for all claims is the assertion that XTO has made improper deductions to transform wellhead gas into a marketable condition for sale.[5] The validity of these individual claims and related defenses asserted by XTO, as well as the scope of the implied duty of marketability as applied to the class members' lease agreements, are issues which do not prevent certification, but rather, are issues capable of resolution at the summary judgment stage of this litigation.

---

[4] Chieftain references an unjust enrichment claim in its briefing. A review of Chieftain's Petition, however, fails to reveal a separately plead claim for unjust enrichment.

[5] The Court rejects XTO's argument in the context of Chieftain's fraud and deceit claim that class certification is inappropriate for lack of commonality given that each class member must establish reliance on a false representation to his or her detriment. Under the circumstances alleged here – false representations uniformly made to royalty owners in writing, on monthly check stubs – certification is not defeated given the inference that could be drawn from such standardized misrepresentations. See Weber v. Mobil Oil Corporation, 243 P.3d 1 (Okla. 2010)(claims for fraud and deceit appropriate for certification in royalty owners class action where standardized written misrepresentations alleged).

**Typicality**

Class certification requires "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge" as both elements seek to determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence." Falcon, 457 U.S. at 157-158, n.13.[6] While the representative plaintiff's claims need not be identical to the class members' claims, there must be some nexus established. Devaughn, 594 F.3d at 1198-99. "A named plaintiff's claim is 'typical' when it arises out of the same event, practice or course of conduct of the defendant, and is based on the same legal theory on which the putative class claims are predicated." Hill v. Kaiser-Francis Oil Co., 2010 WL 2474051, at *4 (W.D. Okla. 2010).

The Court finds that Chieftain's claims for breach of contract, tortious breach of contract, breach of fiduciary duty or quasi-fiduciary duty, fraud (actual and constructive) and deceit, conversion, conspiracy, accounting, and injunctive relief are typical of the class claims. All claims have as their nexus the allegation that XTO made improper deductions from their royalty payments in violation of the implied duty of marketability through the utilization of a common and uniform methodology. As Chieftain

---

[6] The Supreme Court also noted that the commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." Falcon, 457 S.Ct. at 157-58, n.13.

and the class members have sustained the same injury[7] and will use the same evidence to establish their claims, typicality is satisfied.

**Adequacy**

The final prerequisite under Rule 23(a) is that "[t]he representative parties will fairly and adequately protect the interest of the class." Fed.R.Civ.P. 23(a)(4). Evaluation of this factor involves the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class.?" Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002). A minor conflict will not defeat certification – the conflict must be fundamental in the sense that some class members claim harm by the same conduct that benefitted other members of the class. Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). Such a fundamental conflict renders the class representative's interests "actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members." Id.

XTO contends a conflict exists between Chieftain and the putative class members based on its contention that the two leases submitted by Chieftain negate the implied duty to create a marketable product, while other class members are operating under

---

[7] The fact that elements of damages available to class members may vary does not preclude a finding of typicality. See Fankhouser v. XTO Energy, Inc., 2010 WL 5256807, *4 (W.D. Okla. 2010)("The fact that damages may vary or that damages calculations must be conducted on an individual basis for each class member will not preclude a finding of typicality under Rule 23(a)(3).").

14

leases that do not negate such duty. Even assuming the Court ultimately concludes at a later stage of this litigation that the Chieftain-type leases negate the implied duty to create a marketable product, any exclusion of such lessors does not present a fundamental conflict as Chieftain is also a royalty owner in numerous other XTO wells in Oklahoma where the implied duty to market could be applicable. See Abernathy Affidavit at 1-3. Thus, the Court is satisfied that no conflicts exist that would prevent Chieftain from vigorously prosecuting this action on behalf of the Class members. The Court also finds there is no dispute as to the adequacy of class counsel to prosecute this action. Chieftain's attorneys are exceptionally well-qualified, experienced attorneys. Moreover, lead counsel and their firms have participated in numerous oil and gas class actions involving royalty owner issues. See Chieftain's Motion, at 31, n.75. Consequently, the Court finds Chieftain has satisfied the adequacy requirement of Rule 23(a)(4).

**Predominance and Superiority**

As noted above, in addition to satisfying the elements of Rule 23(a), Chieftain must establish one of the prerequisites under Rule 23(b) for certification. Chieftain seeks certification under Rule 23(b), which requires a findings that common questions predominate over individual claims and that a class action is the superior method for adjudicating the controversy. With respect to these findings, the Court examines:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

>     (C) the desirability or undesirability or concentrating
>     the litigation of the claims in the particular forum; and
>
>     (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3). These factors all weigh in favor of certification. No litigation is pending concerning the putative Oklahoma class members[8] and no interest in pursuing an individual action is evident from the pleadings, nor does it appear to be economically feasible to bring individual claims for what, in most circumstances, would be a limited recovery. Furthermore, as the central issue in this case involves the implied duty of marketability and XTO's uniform methodology for deductions with respect to its Oklahoma wells, there is substantial benefit to concentrating the litigation in this forum where the common issues can be resolved in one arena. Finally, the Court does not anticipate difficulties in the management of this class action.

**Conclusion**

Based on the foregoing reasons, the Court finds Chieftain has satisfied its burden under Rule 23 of establishing this case as a class action. Chieftain's Motion for Class Certification is granted and the following class is certified:

> All non-excluded persons or entities who are or were
> royalty owners in Oklahoma wells since July 1, 2002,
> where XTO, including its predecessors or affiliates, is
> or was the operator (or, as a non-operator, XTO
> separately marketed gas). The Class Claims relate only
> to payment for gas and its constituents (helium, residue

---

[8] Of course, the <u>Roderick</u> case involving royalty owners in Kansas wells is pending before the District Court of Kansas. On March 28, 2012, the <u>Roderick</u> case was certified as a class action. <u>See</u> Dkt. No. 108 (Memorandum Order and Opinion).

gas, natural gas liquids, nitrogen and condensate) produced from the wells. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.

The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United State of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies and their affiliates; (3) the claims of royalty owners in XTO wells gathered by Timberland and processed at the Tyrone Plant which are presently the subject of the action styled *Fankouser, et al v. XTO Energy, Inc.*, Case No CIV-07-798-L USDC WD OK (formerly *Beer et al v. XTO*); and (5) persons or entities that Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional conduct.

Chieftain's counsel of record are appointed as class counsel. Since this is an action certified under Rule 23(b)(3), "the best notice that is practicable under the circumstances" must be given "to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). The Court orders the parties to confer and submit to the Court within 30 days of the date of this order a notice that complies with Rule 23(c)(2)(B). Should the parties not reach an agreement on such notice by the end of the 30-day period, Chieftain shall notify the Court in writing and the Court will thereafter set this matter for hearing on the issue of the notice to be sent under Rule 23(c)(2)(B).

It is so ordered this 12th day of April, 2012.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma