**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:11-CV-00029-KEW |
| | ) | |
| XTO ENERGY INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND JUDGMENT GRANTING FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

This is a class action lawsuit brought by Class Representative, Chieftain Royalty Company ("Chieftain," "Class Representative" or "Plaintiff"), on behalf of itself and as representative of a Class of royalty owners (defined below), against XTO Energy Inc. ("Defendant" or "XTO"), for the alleged underpayment of gas royalties on gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate) produced from wells in Oklahoma where XTO, including its predecessors or affiliates, is or was the operator or as a non-operator, XTO separately marketed gas.   On November 20, 2017, the Parties executed a Settlement Agreement and Supplemental Agreements, finalizing the terms of the Settlement.[1]

On January 18, 2018, the Court preliminarily approved the Settlement and issued an Order Granting Preliminary Approval of Class Action Settlement, Certifying the Class for Settlement Purposes, Approving Form and Manner of Notice, and Setting Date for Final Fairness Hearing

---

[1] Capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Settlement Agreement.

(the "Preliminary Approval Order") (Dkt. No. 204).  In the Preliminary Approval Order, the Court,
*inter alia*:

      a.     certified the Settlement Class for settlement purposes, finding all requirements of Federal Rule of Civil Procedure 23(a) and (b)—including numerosity, commonality, typicality, adequacy of representation, predominance and superiority—have been satisfied with respect to the proposed Settlement Class based on the evidence presented by the Parties and the Court's own rigorous analysis of these requirements;

      b.     appointed Plaintiff, Chieftain, as Class Representative and appointed: (a) the following law firms as Settlement Class Counsel: (i) Nix, Patterson & Roach, LLP; (ii) Barnes & Lewis, LLP; and (iii) Gunderson Sharp, LLP (n/k/a Rex A. Sharp, P.A. and Gunderson Law, P.C.); and (b): the following law firms as liaison local counsel for the Settlement Class: (i) Whitten Burrage; and (ii) Richards & Connor, PLLP;

      c.     preliminarily found:  (i) the proposed Settlement resulted from extensive arm's-length negotiations; (ii) the proposed Settlement was agreed to only after Class Counsel had conducted substantial legal research and fact and expert discovery regarding the strengths and weaknesses of Class Representative's and the Settlement Class' claims; (iii) Class Representative and Class Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate; and (iv) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class;

      d.     preliminarily approved the Settlement as fair, reasonable, and adequate and in the best interest of the Settlement Class;

e.      preliminarily approved the form and manner of the proposed Notice and Summary Notice to be communicated to the Settlement Class, finding specifically that such Notice and Summary Notice, among other information:  (i) described the terms and effect of the Settlement; (ii) notified the Settlement Class that Plaintiff's Counsel will seek attorneys' fees and reimbursement of Litigation Expenses; (iii) notified the Settlement Class that Class Representative will seek a Case Contribution Award for Class Representative's services; (iv) notified the Settlement Class of the time and place of the Final Fairness Hearing; (v) described the procedure for requesting exclusion from the Settlement; and (vi) described the procedure for objecting to the Settlement or any part thereof;

f.      instructed the Settlement Administrator to disseminate the approved Notice to potential members of the Settlement Class, to publish the Summary Notice, and to display documents related to the Settlement on an Internet website in accordance with the Settlement Agreement and in the manner approved by the Court, with Administration, Notice, and Distribution Costs up to $750,000 to be paid by Defendant in accordance with the Settlement Agreement;

g.      provided for the appointment of a Settlement Administrator;

h.      provided for the appointment of an Escrow Agent;

i.      set the date and time for the Final Fairness Hearing as March 26, 2018 at 9:00 A.M. in the United States District Court for the Eastern District of Oklahoma; and

j.      set out the procedures and deadlines by which Class Members could properly request exclusion from the Settlement Class or object to the Settlement or any part thereof.

After the Court issued the Preliminary Approval Order, due and adequate notice by means of the Notice and Summary Notice was given to the Settlement Class, notifying them of the Settlement and the upcoming Final Fairness Hearing.  On March 26, 2018, in accordance with the Preliminary Approval Order and the Notice, the Court conducted a Final Fairness Hearing to, *inter alia*:

    a.    determine whether the Settlement Class should be finally certified for settlement purposes under Federal Rule of Civil Procedure 23;

    b.    determine whether the Settlement should be approved by the Court as fair, reasonable, and adequate and in the best interests of the Settlement Class;

    c.    determine whether the notice method utilized by Class Counsel, the expert retained by Class Counsel who assisted in facilitating the assembly of the notice distribution list, and the Settlement Administrator: (i) constituted the best practicable notice under the circumstances; (ii) constituted notice reasonably calculated under the circumstances to apprise potential Class Members of the pendency of the Litigation, the Settlement, their right to exclude themselves from the Settlement, their right to object to the Settlement or any part thereof, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

    d.    determine whether to approve the Allocation Methodology, the Initial Plan of Allocation, and distribution of the Net Settlement Fund to Class Members who did not timely submit a valid Request for Exclusion or were not otherwise excluded from the

Settlement Class by order of the Court;[2]

      e.     determine whether a Judgment should be entered pursuant to the Settlement Agreement, *inter alia*, dismissing the Litigation against Defendant with prejudice and extinguishing, releasing, and barring all Released Claims against all Released Parties in accordance with the Settlement Agreement;

      f.     determine whether the applications for Plaintiff's attorneys' fees, reimbursement of Litigation Expenses, and Case Contribution Award to Class Representative are fair and reasonable and should be approved;[3] and

      g.     rule on such other matters as the Court deems appropriate.

The Court, having reviewed the Settlement, the Settlement Agreement, and all related pleadings, motions, evidence submitted and other filings, and having heard the evidence and argument presented at the Final Fairness Hearing, now **FINDS, ORDERS, and ADJUDGES as follows**:

1.     The Court, for purposes of this Order and Judgment (the "Judgment"), adopts all defined terms as set forth in the Settlement Agreement and incorporates them as if fully set forth herein.

2.     The Court has jurisdiction over the subject matter of this Litigation and all matters relating to the Settlement, as well as personal jurisdiction over Defendant and Class Members.

3.     The Settlement Class, which was certified in the Court's Preliminary Approval Order, is defined as:

---

[2] The Court will issue a separate order pertaining to the allocation and distribution of the Net Settlement Proceeds among Class Members (the "Initial Plan of Allocation Order").

[3] The Court will issue separate orders pertaining to Plaintiff's Counsel's request for attorneys' fees, reimbursement of Litigation Expenses, and Class Representative's request for a Case Contribution Award.

All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where Defendant, including its predecessors or affiliates, is or was the operator or, as a non-operator, Defendant separately marketed gas.  The Class Claims relate only to royalty payments for gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate) produced from such wells from May 1, 2002 through production month May 31, 2017.  The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.

The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America and the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) the claims of royalty owners in Defendant wells gathered by Timberland Gathering & Processing Co. Inc. and processed at the Tyrone Plant that were the subject of the action styled *Fankhouser, et al. v. XTO Energy, Inc.*, Case No. CIV-07-798-L USDC WD OK (formerly *Beer et al. v. XTO*), which was previously settled and all claims fully released; (4) the claims of royalty owners that were previously released by settlement in the case styled *Booth v. Cross Timbers Oil Co.*, Case No. CJ-98-016, District Court for Dewey County, OK, which was previously settled and all claims fully released; (5) persons or entities that Plaintiff's Counsel are prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct, including, but not limited to, Charles David Nutley and Danny George (who Plaintiff's Counsel cannot represent because such representation would create a concurrent conflict of interest); and (6) officers of the Court.

4.      The Court finds that the above-defined Settlement Class has been properly certified for the purposes of this Settlement, that all prerequisites of Federal Rule of Civil Procedure 23(a) and (b) are satisfied, and that, therefore, the above-defined Settlement Class should be and is certified for purposes of this Settlement.  Specifically, the Court finds:

a.      In reviewing a proposed class settlement, the Court must determine whether the action may be maintained as a class action under Rule 23.  *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 278 (D. Kan. 2010).  Trial courts have "considerable discretion" in making class certification decisions.  *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).  The Tenth Circuit "will defer to [a district court's] class certification

ruling provided that decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." *Menocal, et al. v. GEO Grp., Inc.*, No. 17-1125, 2018 U.S. App. LEXIS 3131, at *10-11 (10th Cir. Feb. 9, 2018).

    b.  <u>Numerosity</u>.  Chieftain has demonstrated "[t]he class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  The Tenth Circuit has not adopted a set number as presumptively sufficient to meet this burden, and there is "no set formula to determine if the class is so numerous that it should be so certified."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  Here, the Settlement Class consists of thousands of royalty owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable.  Thus, the Court finds the numerosity prerequisite is satisfied.  *See, e.g.*, *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977).

    c.  <u>Commonality.</u>  Chieftain has shown "[t]here are questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  "A common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  "A finding of commonality requires only a single question of law or fact common to the entire class."  *Menocal*, 2018 U.S. App. LEXIS 3131, at *13 (quoting *DG*, 594 F.3d at 1195).  "'Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'"  *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 U.S. Dist. LEXIS 23096, at *10 (W.D. Okla. Mar. 20, 2009); *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995).  Many Oklahoma federal courts, including this Court, have certified royalty

underpayment class actions, finding common issues existed.[4]   Here, the Court finds numerous questions of law and fact exist that could be answered uniformly for the Settlement Class using common evidence.  Each of these common issues stem from a single body of law—the statutory and common law of the State of Oklahoma—that governs each Class Member's claims and causes of actions pursued here.  The Class Wells at issue constitute property located in the State of Oklahoma, and the royalty payments at issue here are exclusively governed by Oklahoma law.  Thus, any choice of law analysis would result in the application of Oklahoma law and, as such, there are no other states' laws implicated by or relevant to this action, nor any other choice of law issues that could affect or modify the Court's commonality analysis.  The questions of law common to the class include, *inter alia*, the scope of the implied duty to market gas under the Class leases, which requires lessees to bear all costs of transforming raw gas into a marketable product unless "spelled-out" otherwise in the lease.  *See, e.g.*, *Wood v. TXO Prod. Corp.*, 854 P.2d 880, 882-83 (Okla. 1992).  And, whether XTO complied with this duty presents many common questions of fact, including, among others: (i) whether the raw gas stream produced from the Class Wells required the expenditure of costs and expenses to make it marketable; (ii) whether XTO routinely deducted any costs and expenses from Class Members' royalty payments that were incurred before the gas became marketable; and (3) whether XTO can

---

[4] *See, e.g.*, *Chieftain Royalty Co. v. SM Energy Co., et al.*, No. 5:11-cv-00177-D (W.D. Okla. Dec. 23, 2015), Dkt. No. 154 (certifying settlement class); *Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, 2015 U.S. Dist. LEXIS 62450 (W.D. Okla. 2015); *Chieftain Royalty Co. v. QEP Energy Co.*, 2012 U.S. Dist. LEXIS 35842 (W.D. Okla. 2012); *Fankhouser v. XTO Energy, Inc.*, 2010 U.S. Dist. LEXIS 133345 (W.D. Okla. 2010); *Hill v. Kaiser-Francis Oil Co.*, 2010 U.S. Dist. LEXIS 56797 (W.D. Okla. 2010); *Hill v. Marathon Oil Co.*, 2010 U.S. Dist. LEXIS 56650 (W.D. Okla. 2010); *Naylor Farms v. Anadarko OGC Co.*, 2009 U.S. Dist. LEXIS 127516 (W.D. Okla. 2009); *see also Hershey v. ExxonMobil Oil Corp.*, No. 6:07-cv-01300 (D. Kan. Oct. 26, 2012).

prove, under *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203, 1208 (Okla. 1998), that any such deductions were reasonable, were associated with an already marketable product, and increased royalty in proportion to the fee charged.  Based on this record, the Court finds that Chieftain has shown there are questions of law and fact common to the Class Members, and the commonality requirement is satisfied.

        d.    <u>Typicality.</u>  Chieftain has demonstrated that "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  "'Every member of the class need not be in a situation identical to that of the named plaintiff'" to meet the typicality requirement.  *DG*, 594 F.3d at 1195.  Instead, "[p]rovided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."  *Id.* at 1198-99.  Here, the Court finds Chieftain has shown its claims are typical of the Settlement Class because XTO treated all Class Members  the same for purposes of paying royalties, regardless of less language, such that the same legal theories and fact issues underlie the Settlement Class' claims and all Class Members suffered the same injury arising out of the same facts that could be proven using common evidence.  Thus, the Court finds the typicality prerequisite is satisfied.

        e.    <u>Adequacy of Representation.</u>  Chieftain has established that it and Class Counsel "will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  In the Tenth Circuit, the adequacy requirement is satisfied when (i) neither the proposed class representative nor its counsel have interests that conflict with the interests of other class members and (ii) the representatives will prosecute the action vigorously through qualified counsel.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188-

89 (10th Cir. 2002).  To render certification unwarranted on the basis of inadequate representation, a conflict must be fundamental and go to specific issues in controversy; minor or theoretical conflicts will not suffice.  *See Tennille*, 785 F.3d at 430-31.  Here, the Court finds there are no conflicts—minor or otherwise—between Chieftain, Class Counsel and the Settlement Class.  The Court further finds that Chieftain and Class Counsel have vigorously prosecuted this Litigation, and that Class Counsel's substantial experience in class actions and other complex litigation in federal courts throughout the country, including their significant experience and success in royalty underpayment class action litigation, render them qualified to represent the Settlement Class.  Accordingly, the Court finds the adequacy of representation prerequisite is satisfied.

   f. <u>Predominance.</u>  Chieftain has demonstrated that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  FED. R. CIV. P. 23(b)(3).  "'The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson Foods*, 136 S. Ct. at 1045; *see also Menocal*, 2018 U.S. App. at *13-14; *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1087 (10th Cir. 2014).  Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Tyson Foods*, 136 S. Ct. at 1045.  Here, the Court finds the predominance

requirement is satisfied because the common, aggregation-enabling issues, including XTO's common course of royalty underpayment to every Settlement Class Member and the communitization of royalty payments under Oklahoma law, *see* 52 OKLA. STAT. §570.4(A), predominate over and are more important and prevalent over any potential individual issues that could arise in this Litigation. Thus, the Court finds the predominance prerequisite is satisfied here.

g.     Superiority. Although in "deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)[,]" *Motor Fuel*, 271 F.R.D. at 269, the Court, nonetheless, finds Chieftain has established "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Specifically, the Court finds every Class Member has an interest in proving XTO's common course of wrongful conduct, that it would be inefficient and impractical for both the courts and the parties to engage in multiple trials in individual actions regarding the same matters at issue here, that this Litigation has been concentrated in this forum for many years and that there are no anticipated difficulties in managing this case as a class action for settlement purposes only. *See id.* at (b)(3)(A)-(D). Thus, the Court finds certifying this Settlement Class "is superior to other available methods for the fair and efficient adjudication of th[is] controversy." *Id.*

5.     The Court finds that the persons and entities identified in the attached Exhibit 1 have filed timely and valid Requests for Exclusion and are hereby excluded from the foregoing Settlement Class, will not participate in or be bound by the Settlement, or any part thereof, as set

forth in the Settlement Agreement, and will not be bound by or subject to the releases provided for in this Judgment and the Settlement Agreement.

6.     As used in this Judgment, the following terms shall have the following meanings:

a.     "**Released Claims**" include all claims under Oklahoma law that the Releasing Parties may have against the Released Parties related solely to the underpayment of royalties by Defendant (or on behalf of Defendant) on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate) produced from the Class Wells. Without limiting the foregoing, the Released Claims include any and all causes of action, choses in action, demands, debts, obligations, duties, liens, liabilities, and theories of liability and recovery of whatsoever kind and nature, whether based in contract or tort, whether arising in equity or under the common law, whether by statute or regulation, whether known or unknown, whether asserted by the Settlement Class in the past, present, or future, and whether contingent, prospective, or matured, whether for actual or punitive damages relief, interest, injunctive relief, declaratory relief, equitable relief, or any other type of relief, that are, were, or could have been asserted in the Litigation and relate to the underpayment of royalties paid by Defendant (or on behalf of Defendant) on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells. The Released Claims, without limitation, specifically include claims based in whole or in part on allegations: (1) that the Released Parties underpaid royalty as a result of direct or indirect deductions associated with marketing, gathering, transporting, compressing, dehydrating, treating, blending, processing, using or providing plant and compressor fuel, or similar services with respect to gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (2) that the Released Parties improperly paid royalty based on proceeds received from the sale of the gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells, whether under "percentage of proceeds", "percentage of index," or similar contracts; (3) that the Released Parties underpaid royalty on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells by not paying royalty on gas used in operations, gas used in post-production functions, gas used for gas plants, and gas used in the manufacture of products (sometimes referred to as "fuel gas"); (4) that the Released Parties failed to pay or underpaid royalty on drip gas, helium, natural gas liquids, residue gas, nitrogen, and condensate or other substances that separated from the gas stream in the gathering system, gas plant, transmission lines, or other facilities with respect to gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (5) that the Released Parties underpaid royalty by not paying royalty on the full value (before deduction of any costs or fuel gas) of residue gas, natural gas liquids, helium, nitrogen, condensate, or other products that were part of the gas stream produced from the Class Wells; (6) that the Released Parties misled the Releasing Parties as to, among other things, the amount and nature of deductions from royalty on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (7) that Released Parties violated any alleged fiduciary duties to the Releasing

Parties and/or failed to comply with the implied duty to produce a marketable product (also sometimes referred to as the "marketable condition rule") in calculating and paying royalties on gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (8) that the Released Parties failed to provide all of the information required by the Oklahoma Production Revenue Standards Act ("PRSA") or otherwise failed to comply with the PRSA; (9) that the Released Parties failed to make diligent efforts to secure the best terms (including but limited to pricing terms or other terms that impact price) available for the sale of gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate); (10) that the Released Parties failed to account to Class Members for the full value of the production, including all deductions and reductions from the value of gas and gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells; (11) that affiliate or alleged self-dealing transactions by the Released Parties violated or breached any duties owed by the Released Parties to the Releasing Parties or damaged the Releasing Parties; (12) that any royalty payment adjustments (also known as prior period adjustments) made by Defendant in the ordinary course of business with respect to gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced from the Class Wells during the Class Period are underpaid as a result of direct or indirect deductions associated with marketing, gathering, transporting, compressing, dehydrating, treating, blending, processing, providing plant and compressor fuel, or similar services; and (13) that as a result of the Released Parties' actions with respect to the Class Wells, the Released Parties (or any one of them) are liable to Class Members for breach of contract, tortious breach of contract, breach of fiduciary or quasi-fiduciary duty, actual fraud, constructive fraud, deceit, conversion, conspiracy, unjust enrichment/disgorgement, accounting, actual damages, punitive damages, injunctive relief, statutory interest, or penalties under the PRSA.

The Released Claims do not include claims related to gas or gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced outside the Class Period.  The Released Claims do not include any allegations of underpayment or other claims with respect to royalty computed and paid by third party operators (i.e., operators other than the Released Parties) on gas or gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) that was not marketed by the Released Parties.  The Released Claims also specifically do not include: (a) claims, except those claims for underpayment identified in subpart (12) above, related to royalty payment adjustments that Defendant may make in the ordinary course of business reflecting routine prior period adjustments for clerical or administrative errors concerning prices actually received or volumes actually sold that historically have been addressed by Defendant by way of prior period adjustments, but only to the extent that (i) the adjustment reflects a retroactive price, volume, or value adjustment and (ii) the adjustment pertains to gas or gas constituents (including helium, residue gas, natural gas liquids, nitrogen, and condensate) produced outside of the Class Period; (b) claims, except those claims for underpayment released herein, regarding entitlement to money held in suspense by Defendant or any statutory interest owed upon such money if/when it is released from suspense; (c) claims that Defendant failed to comply with obligations to protect Class Members from drainage

or other implied covenants not related to royalty calculation, accounting, or payment; (d) claims that Defendant breached obligations to Class Members to develop Oklahoma oil and gas leases; (e) claims related to surface or crop damage; or (f) claims related to oil.

In addition, Class Members' Released Claims do not include the *Reirdon*-Related Claims. However, this agreement regarding the *Reirdon*-Related Claims is subject to the express understanding of the Parties that it does not apply to the extent the *Reirdon*-Related Claims or the damages sought in *Reirdon* are the same as those asserted or sought in the Litigation. Further, in the event the claims asserted or damages sought in the Litigation and those asserted or sought in *Reirdon* are the same, then all such claims or damages are included in this Settlement Agreement as a Released Claim.

   b. **"Released Parties"** means Defendant; its predecessors, successors, heirs, assignors, and assignees; any person or entity who made royalty payments on behalf of Defendant or its predecessors, successors, heirs, and assigns; and any past and present directors, officers, employees, attorneys, agents, consultants, servants, stockholders, members, representatives, subsidiaries, and affiliates of the foregoing persons or entities, including without limitation, Ringwood Gathering Company, Timberland Gathering & Processing Co., Inc., Ardmore Gathering, and Cross Timbers Energy Services (CTES).

   c. **"Releasing Parties"** means Class Members; their predecessors, successors, heirs, assignors, and assignees; and any past and present affiliates, officers, employees, attorneys, agents, consultants, servants, stockholders, members, representatives, subsidiaries, and affiliates of such persons or entities.

   d. **"Class Period"** means the time period during and for which Chieftain and the Settlement Class are releasing the Released Claims.  For each Class Well, the Class Period commences for production month May 2002 and ends the earlier of either: (i) the end of the latest production month in which Defendant operated or separately marketed gas or any of its constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate) from that well or (ii) the last day of the production month ending May 31, 2017.

   7. At the Final Fairness Hearing on March 26, 2018, the Court fulfilled its duties to independently evaluate the fairness, reasonableness, and adequacy of, *inter alia*, the Settlement and the Notice of Settlement provided to the Settlement Class, considering not only the pleadings and arguments of Class Representative and Defendant and their respective Counsel, but also the interests of all absent Class Members.  In so doing, the Court considered arguments that could reasonably be made against, *inter alia*, approving the Settlement and the Notice of Settlement, even if such argument was not actually presented to the Court by pleading or oral argument.

8.     The Court further finds that due and proper notice, by means of the Notice of Settlement and Summary Notice, was given to the Settlement Class in conformity with the Settlement Agreement and Preliminary Approval Order.  Pursuant to the proposed manner of communicating the Notice of Settlement and Summary Notice to the Settlement Class that the Court preliminarily approved, Class Counsel in conjunction with Class Counsel's oil and gas accounting expert, and the Settlement Administrator, caused the Notice of Settlement to be mailed to the Settlement Class and the Summary Notice to be published to the Settlement Class as described below.

a.     The Settlement Administrator caused the Notice of Settlement to be mailed by first-class mail to a total of 22,521 potential Class Members, which constitutes all potential Class Members who could be identified through reasonable efforts.

b.     On February 12, 2018, the Settlement Administrator caused the Notice of Settlement to be mailed by first-class mail to 20,692 potential Class Members who were identified after reasonable efforts to do so.  JND caused the Notice of Settlement to be mailed to these potential Class Members identified using the royalty payment data described in paragraph 3.3 of the Settlement Agreement and any updated addresses found by the Settlement Administrator.  For wells currently operated by Defendant, the Settlement Administrator caused the Notice of Settlement to be mailed to potential Class Members identified by Class Counsel and the expert retained by Class Counsel using Defendant's approximate July 2017 royalty payment data for May 2017 production.  For non-operated wells where Defendant separately marketed gas, the Settlement Administrator caused the Notice of Settlement to be mailed to potential Class Members identified using the current royalty owner names and addresses provided to Class Representative by the well operator.  For wells that have been sold, assigned, or transferred by XTO or are no

longer producing, the Settlement Administrator caused the Notice of Settlement to be mailed to the potential Class Members who were paid royalty on gas (or its constituents) by Defendant during the last thirteen (13) months of production for which Defendant paid royalty.  These potential Class Members were identified using electronic data provided to Class Counsel by Defendant.

c.      On February 21, 2018, the Settlement Administrator caused the Notice of Settlement to be mailed by first-class mail to 21 potential Class Members in operated wells for whom the Settlement Administrator subsequently obtained addresses.

d.      On February 22, 2018, the Settlement Administrator caused the Notice of Settlement to be mailed by first-class mail to 470 potential Class Members that Class Counsel identified from additional data from third-party operators after the initial February 12, 2018 mailing.

e.      On February 26, 2018, the Settlement Administrator caused the Notice of Settlement to be mailed by first-class mail to an additional 1,338 potential Class Members  who were paid royalty for gas (or gas constituent) production from wells that have been sold, assigned, or transferred by XTO or are no longer producing.  After the initial February 12, 2018 mailing, these potential Class Members were identified using the electronic data provided to Class Counsel by Defendant.

f.      Class Counsel did not cause notice to be mailed to persons or entities they identified as being excluded from the Settlement Class.

g.      It was not reasonable or economically practical for the Parties, the experts retained by Class Counsel, or the Settlement Administrator to do more than the steps described above and at the Final Fairness Hearing to identify and cause notice to be mailed to potential Class

Members.  These steps protected the Due Process Rights of potential and participating Class Members.

h.     The Settlement Administrator also caused the Summary Notice to be published.  On February 7, 2018, the Settlement Administrator caused the Summary Notice to appear in each of the following newspapers: (1) the *Oklahoman*, a paper of general circulation in Oklahoma; (2) the *Tulsa World*, a paper of general circulation in Oklahoma; (3) *The Daily Ardmoreite*, a paper of local circulation; (4) *McAlester News-Capital*, a paper of local circulation; and (5) the *Holdenville Tribune*, a paper of local circulation. On February 8, 2018, the Settlement Administrator caused the Summary Notice to appear in the *Fairview Republican*, a paper of local circulation.

i.     On February 6, 2018, the Settlement Administrator established an informational Internet website dedicated to the Settlement which displayed important case documents including (1) the Notice of Settlement; (2) the Petition and Answer; (3) the Settlement Agreement; and (4) the Preliminary Approval Order.

j.     The form, content, and method of communicating the Notice disseminated to the Settlement Class and the Summary Notice published pursuant to the Settlement Agreement and the Preliminary Approval Order:  (i) constituted the best practicable notice under the circumstances; (ii) constituted notice reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the litigation, the Settlement, their right to exclude themselves from the Settlement, their right to object to the Settlement or any part thereof, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States

Constitution, the Due Process protections of the State of Oklahoma, and any other applicable law. Therefore, the Court approves the form, manner, and content of the Notice of Settlement and Summary Notice used by the Parties. The Court further finds that all Class Members have been afforded a reasonable opportunity to request exclusion from the Settlement Class or object to the Settlement.

9.     Pursuant to and in accordance with Federal Rule of Civil Procedure 23, the Settlement, including, without limitation, the consideration paid by Defendant, the covenants not to sue, the releases, and the dismissal with prejudice of the Released Claims against the Released Parties as set forth in the Settlement Agreement, is finally approved as fair, reasonable and adequate and in the best interests of the Settlement Class. The Settlement Agreement was entered into between the Parties at arm's-length and in good faith after substantial negotiations free of collusion. The Settlement fairly reflects the complexity of the Claims asserted in the Litigation, the duration of the Litigation, the extent of discovery, and the balance between the benefits the Settlement provides to the Settlement Class and the risk, cost, and uncertainty associated with further litigation and trial. Serious questions of law and fact remain contested between experienced counsel and parties alert to defend their interests. The Settlement provides a means of gaining immediate valuable and reasonable compensation and forecloses the prospect of uncertain results after many more months or years of additional discovery and litigation. The considered judgment of the Parties, aided by experienced legal counsel, supports the Settlement. The Parties, the Settlement Administrator, and the Escrow Agent are hereby authorized and directed to comply with and to cause the consummation of the Settlement in accordance with the Settlement Agreement, and the Clerk of this Court is directed to enter and docket this Judgment in the Litigation.

10.     By agreeing to settle the Litigation, Defendant does not admit, and instead specifically denies, that the Litigation could have otherwise been properly maintained as a contested class action, and specifically denies any and all wrongdoing and liability to the Settlement Class, Class Representative, and Plaintiff's Counsel.

11.     The Court finds that on December 1, 2017, Defendant caused notice of the Settlement to be served on the appropriate state official for each state in which a Class Member resides, and the appropriate federal official, as required by and in conformance with the form and content requirements of 28 U.S.C. §1715.  In connection therewith, the Court has determined that, under 28 U.S.C. 28 §1715, the appropriate state official for each state in which a Class Member resides was and is the State Attorney General for each such state, and the appropriate federal official was and is the Attorney General of the United States.  Further, the Court finds it was not feasible for Defendant to include on each such notice the names of each of the Class Members who reside in each state and the estimated proportionate share of each such Class Members to the entire Settlement as provided in 28 U.S.C. §1715(b)(7)(A); therefore, each notice included a reasonable estimate of the number of Class Members residing in each state and the estimated proportionate share of such Class Members.  No state or federal official has entered an appearance or filed an objection to the entry of final approval of the Settlement.  Thus, the Court finds that all requirements of 28 U.S.C. §1715 have been met and complied with and, as a consequence, no Class Member may refuse to comply with or choose not to be bound by the Settlement and this Court's Orders in furtherance thereof, including this Judgment, under the provisions of 28 U.S.C. §1715.

12.     The Litigation and the Petition and all claims included therein, as well as all Released Claims, are dismissed with prejudice as to the Released Parties.  The Court finds that

Defendant has agreed not to file a claim against Plaintiff or Plaintiff's Counsel based upon an assertion that the Litigation was brought by Plaintiff or Plaintiff's Counsel in bad faith or without a reasonable basis.  Similarly, the Court finds that Plaintiff has agreed not to file a claim against Defendant or Defendant's Counsel based upon an assertion that the Litigation was defended by Defendant or Defendant's Counsel in bad faith or without a reasonable basis.  All Class Members who have not validly and timely submitted a Request for Exclusion to the Settlement Administrator as directed in the Notice of Settlement and Preliminary Approval Order (i) on behalf of the Releasing Parties are hereby deemed to have finally, fully, and forever conclusively released, relinquished, and discharged all of the Released Claims against the Released Parties and (ii) are barred and permanently enjoined from, directly or indirectly, on the Class Member's behalf or through others, suing, instigating, instituting, or asserting against the Released Parties any claims or actions on or concerning the Released Claims based in whole or in part on any facts existing during the Claim Period.  Neither Party will bear the other's Party's litigation costs, costs of court, or attorney's fees.  The Court orders that the Residual Unclaimed Funds shall be distributed pursuant to the procedures and at the time specified in the Settlement Agreement.

13.     No Class Member has filed an objection to the fairness, reasonableness or adequacy of the Settlement, any term of the Settlement, the Allocation Methodology, the Initial Plan of Allocation, the request for Plaintiff's Attorneys' Fees and Litigation Expenses, or the proposed request for a Case Contribution Award to Class Representative before the March 8, 2018 deadline set by the Court in its Preliminary Approval Order or thereafter.  As such, there are no objections. Any objections that may be filed hereafter are therefore untimely and overruled.

14.     The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration LLC, and the Escrow Agent, Citibank, N.A., in assisting with certain

aspects of the administration of the Settlement, and directs them to continue to assist Class Representative in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.

15.     Nothing in this Judgment shall bar any action or claim by Class Representative or Defendant to enforce or effectuate the terms of the Settlement Agreement or this Judgment.

16.     To the extent applicable and if it has not already occurred, the Settlement Administrator is directed to refund to Defendant the amount attributable to Class Members who timely and properly submitted a Request for Exclusion or who were otherwise excluded from the Settlement Class by order of the Court in accordance with paragraph 6.4 of the Settlement Agreement.

17.     This Judgment, the Settlement, and the Settlement Agreement—including any provisions contained in or exhibits attached to the Settlement Agreement; any negotiations, statements, or proceedings in connection therewith; or any action undertaken pursuant thereto— shall not be admissible in any action or proceeding for any reason, other than an action to enforce the terms of this Judgment or the Settlement (including, but not limited to, defending or bringing an action based on the release provided for herein).  The Judgment, the Settlement, and the Settlement Agreement are not and shall not be deemed, described, or construed to be or offered or received as evidence of a presumption, concession, declaration, or admission by any person or entity of the truth of any allegation made in the Litigation; the validity or invalidity of any claim or defense that was, could have been, or might be asserted in the Litigation; the amount of damages, if any, that would have been recoverable in the Litigation; or any liability, negligence, fault, or wrongdoing of any person or entity in the Litigation.

18.     As separately set forth in detail in the Court's Plan of Allocation Order(s), the Allocation Methodology, the Initial Plan of Allocation, and distribution of the Net Settlement Fund among Class Members who were not excluded from the Settlement Class by timely filing a valid Request for Exclusion or other order of the Court are approved as fair, reasonable and adequate, and Class Counsel and the Settlement Administrator are directed to administer the Settlement in accordance with the Plan of Allocation Order(s) entered by the Court.

19.     The Court finds that Class Representative, Defendant, and their Counsel have complied with the requirements of the Federal Rules of Civil Procedure as to all proceedings and filings in this Litigation.  The Court further finds that Class Representative and Plaintiff's Counsel adequately represented the Settlement Class in entering into and implementing the Settlement.

20.     Neither Defendant nor Defendant's Counsel has any liability or responsibility to Plaintiff, Plaintiff's Counsel, or the Settlement Class with respect to the Gross Settlement Fund or its administration, including but not limiting to any distributions made by the Escrow Agent or Settlement Administrator.  Except as described in paragraphs 6.19 and 6.21 of the Settlement Agreement, no Class Member shall have any claim against Plaintiff's Counsel, the Settlement Administrator, the Escrow Agent, or any of their respective designees or agents based on the distributions made substantially in accordance with the Settlement Agreement, the Court's Plan of Allocation Order(s), or other orders of the Court.

21.     Any Class Member who receives a Distribution Check that he/she is not legally entitled to receive is hereby ordered to either (1) pay the appropriate portion(s) of the Distribution Check to the person(s) legally entitled to receive such portion(s), or (2) return the Distribution Check uncashed to the Settlement Administrator.

22.     All matters regarding the administration of the Escrow Account and the taxation of funds in the Escrow Account or distributed from the Escrow Account shall be handled in accordance with Section 5 of the Settlement Agreement.

23.     Any order approving or modifying any Plan of Allocation Order(s), the application by Class Counsel for an award of attorneys' fees or reimbursement of Litigation Expenses, or the request of Class Representative for a Case Contribution Award shall be handled in accordance with the Settlement Agreement and the documents referenced therein (to the extent the Settlement Agreement and documents referenced therein address such an order).

24.     Plaintiff's Counsel, Plaintiff, and the Settlement Class will only be liable for loss of any portion of the Escrow Account as described in paragraph 6.21 of the Settlement Agreement.

25.     Without affecting the finality of this Judgment in any way, the Court (along with any appellate court with power to review the Court's orders and rulings in the Litigation) reserves exclusive and continuing jurisdiction over the Litigation, Class Representative, the Settlement Class, Defendant, and the other Released Parties for the purposes of:  (i) supervising and/or determining the fairness and reasonableness of the implementation, enforcement, construction, and interpretation of the Settlement, the Settlement Agreement, any Plan of Allocation Order(s) entered by the Court, and this Judgment; (ii) hearing and determining any application by Class Counsel for an award of Plaintiff's attorneys' fees, and Litigation Expenses and/or a Case Contribution Award for Class Representative, if such determinations were not made at the Final Fairness Hearing; (iii) supervising the distribution of funds from the Escrow Account; (iv) resolving any dispute regarding a Party's right to terminate the Settlement pursuant to the Settlement Agreement; (v) enforcing the terms of the Settlement, including the entry of injunctive or other relief to enforce, implement, administer, construe and interpret the Settlement Agreement

and Supplemental Agreements; and (vi) exercising jurisdiction over any challenge to the Settlement on any basis whatsoever.

26.      In the event the Settlement is terminated as the result of a successful appeal of this Judgment or does not become Final and Non-Appealable in accordance with the terms of the Settlement Agreement for any reason whatsoever, then this Judgment and all orders previously entered in connection with the Settlement shall be rendered null and void and shall be vacated to the extent provided by and in accordance with the Settlement Agreement.  The provisions of the Settlement Agreement relating to termination of the Settlement Agreement shall be complied with, including the refund of amounts in the Escrow Account to Defendant and the refund by Plaintiff's Counsel into the Escrow Account of any amounts previously paid to them from the Escrow Account.

27.      In the event that Class Representative, Defendant, or any of the Released Parties institute any legal action against the other to enforce any provision of the Settlement Agreement or this Judgment, the prevailing party or parties shall be entitled to recover from the non-prevailing party or parties reasonable attorneys' fees and costs incurred in connection with any such action.

28.      The claims asserted by Class Representative in this Litigation are hereby DISMISSED WITH PREJUDICE to the refiling of the same or any portion thereof by or against the Released Parties.  The Court retains jurisdiction pursuant to paragraph 24 above to administer the Settlement distribution process as contemplated in the Court's separate Plan of Allocation Order(s), to administer other aspects of the Settlement as described in the Settlement Agreement, and to issue additional orders pertaining to, *inter alia*, Class Counsel's request for Plaintiff's attorneys' fees and reimbursement of reasonable Litigation Expenses and Class Representative's request for a Case Contribution Award.   Notwithstanding the Court's jurisdiction to issue

additional orders in this Litigation, this Judgment fully disposes of all claims as to Defendant and is therefore a final appealable judgment.  The Court further hereby expressly directs the Clerk of the Court to file this Judgment as a final order and final judgment in this Litigation.

IT IS SO ORDERED.

Dated this 27th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE