IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHIEFTAIN ROYALTY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-29-DES |
| ) | |
| XTO ENERGY, INC. (including predecessors, ) | |
| successors, and affiliates), ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant/Released Party XTO Energy, Inc. ("XTO"), Released Party Exxon Mobil Corporation ("Exxon Mobil"), and Released Party ExxonMobil Oil Corporation's ("EMOC") (collectively, the "Defendants") Motion to Enforce (Docket No. 262) against Class Members Fred A. Fischer (as General Partner of Fischer Family Farms Family Limited Partnership) and Roger A. Fischer (as Agent for the Allan and Carolyn Fischer Family Limited Partnership) (collectively, the "Fischers"). On August 19, 2025, a hearing was held in which counsel for the Defendants and counsel for the Fischers presented oral arguments. For the reasons set forth below, the Defendants' Motion to Enforce is GRANTED in part and DENIED in part.

    **I.    Background**

In December 2002, the Fischers filed a lawsuit (the "*Fischer*" lawsuit) in the District Court of Texas County, Oklahoma (CJ-2002-125) against three defendants: Exxon Mobil and two oil and gas units (the "Postle/Hovey Units"). (Docket No. 262 at 8). The Fischers allege that they own mineral interests in Texas County, including interests in the Postle/Hovey Units. *Id.* The

1

Fischers further allege that Exxon Mobil[1] operated the Postle/Hovey Units and underpaid royalties associated with gas produced therefrom. *Id.* The Fischers seek recovery for themselves and a putative class of similarly situated royalty interest owners. *Id.*

After Exxon Mobil served its discovery responses in 2003, nothing substantive was filed in the lawsuit until 2006, when Exxon Mobil moved for summary judgment on the basis that the Fischers had sued the wrong entity. *Id.* at 9. In February 2007, the Fischers said they would soon respond to the summary judgment motion. *Id.* The Fischers did not respond to the summary judgment motion and the case went dormant for 12+ years. *Id.*

While *Fischer* was dormant, Chieftain Royalty Company ("Chieftain") filed this class action lawsuit against "XTO Energy, Inc., including predecessors, successors and affiliates" in 2010. (Docket No. 2-2). Chieftain sought to represent a class of "royalty owners in Oklahoma wells where XTO, including its predecessors or affiliates, is or was the operator." *Id.* After years of litigation, the parties reached a class settlement in 2017. (Docket No. 197). The Chieftain settlement provided more than $220 million in consideration to the Class Members (including an $80 million cash payment and changes to royalty practices that, according to the Class Members, carried $140 million in value) in exchange for a broad release of claims associated with royalties on gas produced between May 2002 and May 2017. (Docket No. 262 at 10).

In November 2017, Chieftain asked the Court to certify the settlement class and approve the class settlement. (Docket Nos. 196 and 197). Following several hearings and motions, Magistrate Judge Kimberly West entered an Order and Judgment certifying the settlement class and approving the class settlement in March 2018 (the "Judgment"). (Docket No. 229). The

---

[1] Defendants note the Fishers sued the wrong entity as Exxon Mobil never held the Fishers' leases and never operated the Fishers' wells. (Docket No. 262 at 8). Despite telling the Fishers this and explaining that EMOC is the actual lease holder and operator, this was never corrected. (*Id.* at 8-9).

Judgment contains a release provision stating, in pertinent part, that the Releasing Parties are "hereby deemed to have finally, fully, and forever conclusively released, relinquished, and discharged all of the Released Claims against the Released Parties." *Id*. at 20. The Judgment also permanently enjoins Class Members from pursuing the Released Claims against the Released Parties. *Id*. ("All Class Members…are barred and permanently enjoined from…asserting against the Released Parties any claims or action on or concerning the Released Claims[.]"). The Judgment further provides that "the Court…reserves exclusive and continuing jurisdiction over the Litigation, Class Representative, the Settlement Class, Defendant, and the other Released Parties for the purposes of…(v) enforcing the terms of the Settlement, including the entry of injunctive or other relief to enforce…and interpret the Settlement Agreement[.]" *Id*. at 23.

      The Fishers were members of the Settlement Class and despite an opportunity to preserve their state court claims by opting out of the settlement, they did not opt out and in fact received substantial cash payments as members of the Settlement Class. (Docket No. 262 at 11-12). Despite being members of the Settlement Class and bound by the Judgment, the Fishers, through their counsel Rex Sharp,[2] revived their state court case against Exxon Mobil for underpayment of royalties between 2002 and 2013, which Defendant argues are Released Claims against Released Parties in violation of the Court's injunction and Judgment. *Id.* The Fishers argue: (1) the Oklahoma state court has already ruled on the preclusion issue and denied Exxon Mobil's motion for summary judgment; and (2) the Fischers' claims against Exxon Mobil do not fall within the scope of the release in the *Chieftain v. XTO* settlement. (Docket No. 274 at 5-6).

---

[2] Rex Sharp was appointed Class Counsel and "spent a substantial amount of time and effort in negotiating and preparing the necessary paperwork related to the Settlement."(Docket No. 262 at 10).

## II.   Analysis

### A.   Released Parties

As an initial matter, the Court will address whether Exxon Mobil and EMOC are considered Released Parties under the *Chieftain v. XTO* Judgment. The Judgment reads, "[t]his is a class action lawsuit brought by . . . Chieftan Royalty Company. . . on behalf of itself and as representative of a Class of royalty owners against XTO Energy Inc., . . . for the alleged underpayments of gas royalties . . . produced from wells in Oklahoma where XTO, including its predecessors or affiliates, is or was the operator or as an non-operator, XTO separately marketed gas." (Docket No. 229 at 1). Defendants argue Exxon Mobil and EMOC are Released Parties as defined in the Judgment as follows:

> "**Released Parties" means [XTO]; [XTO's] predecessors**, successors, heirs, assignors, and assignees; any person or entity who made royalty payments on behalf of [XTO] or its predecessors, successors, heirs, and assigns; and any past and present directors, officers, employees, attorneys, agents, consultants, servants stockholders, members, representatives, subsidiaries, **and affiliates of the foregoing persons or entities,** including without limitation, Ringwood Gathering Company, Timberland Gathering & Processing Co., Inc., Ardmore Gathering, and Cross Timbers Energy Services (CTES).

*Id.* at 14. (Emphasis added). Specifically, Defendants argue that Exxon Mobil and EMOC are affiliates and predecessors of XTO, and as such they are Released Parties under the Judgment. All parties agree that prior to July 2013 EMOC, as a wholly owned subsidiary of Exxon Mobil, operated wells including some of the Fischer wells. (Docket No. 274 at 9 and Docket No. 262 at 13). In June 2010, "Exxon Mobil Corporation acquired XTO Energy, Inc. by merging a wholly owned subsidiary of ExxonMobil Oil Corporation with and into XTO Energy, Inc. with XTO Energy, Inc. then continued as the surviving corporation and as a wholly owned subsidiary of ExxonMobil Oil Corporation." *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1080 (E.D. Okla. 2020). As a result of the merger, XTO became a wholly owned subsidiary of EMOC. *Id.* In July

2013, EMOC transferred the Fischer wells to XTO Energy, Inc. (Docket No. 274 at 9 and Docket No. 262 at 13). Accordingly, EMOC qualifies as a predecessor of XTO and is therefore included as a "Released Party" under the terms of the Judgment. This conclusion is consistent with the holding in *Key* where Judge Jones expressly recognized EMOC as a Released Party. *See Key*, 508 F. Supp. 3d at 1080.

While it is true that the Fischers never had a lease with Exxon Mobil and Exxon Mobil never operated the Fischers' wells specifically, Exxon Mobil did hold other leases that were then transferred to XTO around the same time Fischers' wells were transferred to XTO, which would make Exxon Mobil a predecessor of XTO. *See Key*, 508 F. Supp. 3d at 1080 (explaining that two of the Key plaintiffs' leases/wells were held/operated by Exxon Mobil before being transferred to XTO, and that Exxon Mobil was therefore a predecessor of XTO and a "Released Party").

Even if there is question as to whether Exxon Mobil is a predecessor of XTO as it relates to the Fischer wells, there is no question that Exxon Mobil and EMOC are affiliates of XTO since XTO has been a wholly owned subsidiary of Exxon Mobil since 2010. (Docket No. 262-5 at 48). As Defendants point out, the Tenth Circuit and Oklahoma federal district courts regard parent corporations as "affiliates" of their subsidiaries. *E.g., Duke Energy Nat. Gas Corp. v. C.I.R.*, 172 F.3d 1255, 1256 (10th Cir. 1999) ("Duke is the common parent of affiliated corporations," including a "wholly owned subsidiary"); *Santa Fe Energy v. McCutcheon*, 90 F.3d 409, 411 (10th Cir. 1996) (discussing the "wholly owned affiliate" of a corporation); *Beer v. XTO Energy*, CIV-07-798-L, 2010 WL 476715, at *3 (W.D. Okla. Feb. 5, 2010) ("XTO sells the gas . . . to its wholly-owned subsidiary, Timberland. . . . [T]he court finds the XTO Timberland contract . . . is between…affiliated companies."); *Key,* 508 F.Supp. at 1081 n.6 (To the extent Plaintiffs argue Exxon Mobil Corporation and ExxonMobil Oil Corporation are not "affiliates" of XTO Energy,

Inc., the Court finds it unnecessary to decide the issue as it is clear they are predecessors. Even without deciding, however, the Court notes it unlikely that a parent corporation would not be considered an affiliate of its wholly owned subsidiary.). Therefore, "Exxon Mobil (XTO's parent) and EMOC (XTO's sibling) are both 'affiliates' of XTO." (Docket No. 262 at 15).

The Fischers argue that the *Chieftain* Judgment for the underpayment of royalties applies only to the Plaintiffs' claims against XTO as the only named Defendant, therefore "the claims released by the *Chieftain v. XTO* settlement related solely to the underpayment of royalties by XTO Energy[,] Inc. or on its behalf." (Docket No. 274 at 13). This assertion is made with no supporting authority and without much merit in light of the inclusion of the terms "where XTO, including its predecessors or affiliates, is or was the operator" when describing "Defendant" in the Judgment. (Docket No. 229 at 1). Moreover, "Released Parties" as defined in the Judgment include: "Defendant; its predecessors; . . . any person or entity who made royalty payments on behalf of Defendant or its predecessors; . . . and any past and present . . . affiliates." (Docket No. 229 at 14). Accordingly, Exxon Mobil and EMOC are clearly "Released Parties" as defined in the Judgment.

    B. Released Claims

The Fischers next argue that "even if Exxon Mobil were deemed a Released Party, it would only be released from claims concerning XTO's royalty payments [rather than] its own independent royalty payments before it transferred the Fischers' wells to XTO in 2013." (Docket No. 274 at 16). This is because, the Fischers argue, the "Released Claims" in the *Chieftain* Judgment are not the same claims in the *Fischer* lawsuit. *Id.* at 14-17. However, the *Fischer* lawsuit alleges Exxon Mobil underpaid royalties by: (1) wrongfully deducting various fees (e.g., for gathering, compressing, dehydrating, and transporting gas) from the Fischers' royalties, in

6

violation of the implied duty of marketability; and (2) not paying royalties on the full volume and value of gas produced from the Fischers' wells." (Docket No. 262 at 17). The Fischers argue the "Released Claims" in the Judgment are limited to all claims "related solely to the underpayment of royalties by Defendant (or on behalf of Defendant)" and that "Defendant" is defined only as "XTO Energy Inc." (Docket No. 274 at 16). However, the "Released Claims" section in the Judgment contains an expansive definition of claims that are being released by way of the settlement and Judgment, many of which are being released against the Released Parties. Defendants summarize this section in their Reply, noting:

> The definition of 'Released Claims' spans more than two full pages. Over half of the definition comprises a single sentence stating: '**The Released Claims, without limitation, specifically include claims** based in whole or in part on **allegations…that the Released Parties** underpaid royalties' in 13 ways including '(1) that the Released Parties underpaid royalties as a result of direct or indirect deductions…(2) that the Released Parties improperly paid royalty based on proceeds received…; (3) that the Released Parties underpaid royalty…by not paying royalty on gas used in operations…; (4) that the Released Parties failed to pay or underpaid royalties on drip gas…,' etc.

(Docket No. 275 at 4 citing Docket No. 229 at 12). While the Fischers argue these "later examples" "merely describe the kinds of claims covered within the pre-defined scope" (Docket No. 274 at 15), in reality the "Released Claims" section of the Judgment covers every conceivable claim based on allegations that gas royalties were underpaid on Class Wells during the Class Period, including the claims for improper deductions/implied duty and failure to pay royalties on the full volume/value of gas that form the core of the Fischers' claims. We know the "Released Claims" section of the Judgment contemplates the release of more than just the claims against XTO, because the section also defines what the "Released Claims" do not release, which includes "any allegations of underpayment or other claims with respect to royalty computed and paid by third party operators (*i.e.*, operators other than the Released Parties)." (Docket No. 229 at 13). This

section does not say "operators other than the Defendant," it notes third party operators are those other than the Released Parties, which include Exxon Mobil and EMOC.

### C. Oklahoma State Court Decision Does Not Control

The Fischers allege *Smith v. Bayer Corp.*, 564 U.S. 299 (2011) and *Cecil v. BP Am. Prod.*, 2020 WL 9048653 (E.D. Okla. May 5, 2020) are "controlling precedent," and claim these cases dictate that the "Court should defer to the Oklahoma state court's decision" regarding the preclusive effect of this Court's Judgment. (Docket No. 275 at 8). Respectfully, the Court does not agree. First, the state court did not make any decision regarding the application of the Judgment on the Claims asserted in the *Fischer* case. In fact, as evidenced by the Minute Order from the state court hearing on the Motion for Summary Judgment, Judge Parsley specifically, "did not ultimately decide the underlying issues that were being argued in the Motion." (Docket No. 262-19 at 2). Instead, Judge Parsley felt that "there was a substantial controversy as to each of the material facts" and therefore concluded "Defendants [were] not entitled to a judgment as a matter of law." *Id.* Despite the Fischers' argument that the "state court has already ruled on the preclusion issue in denying Exxon Mobil's summary judgment motion" a denial of summary judgment is not a decision on the merits and is not a final order. *Stewart v. Oklahoma,* 292 F.3d 1257, 1259 (10th Cir. 2002) ("A denial of summary judgment is not a final order").

The Fischers further argue that under *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011), federal courts must defer to state courts in deciding preclusion questions. (Docket No. 274). But this is not what that Supreme Court held. *Smith* involved two putative class actions against Bayer: one filed by McCollins and removed to federal court, and one filed by Smith in state court. *Smith*, 564 U.S. at 302-03. The federal court denied class certification in McCollins's lawsuit and then enjoined the state court from deciding Smith's motion to certify. The Court held that a federal

district court exceeded its authority under the re-litigation exception to the Anti–Injunction Act, 28 U.S.C. § 2283, by enjoining a state court from considering class certification because the re-litigation exception applies only when: (1) the same issue was previously decided and (2) when the party to be bound was part of the prior judgment. *Id.* at 306-07. In *Smith* neither condition was met because the state court was applying a different legal standard under West Virginia's approach to Rule 23, and because the plaintiff was not a party to the prior federal action nor a member of a certified class since a class was never certified. *Id.* at 318. Accordingly, the Court found no basis for preclusion and reversed the injunction as an improper intrusion on state court authority. *Id.* But *Smith* also affirmed that "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Id.* at 314 (citing *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ); *see also Frank v. Crawley Petroleum*, 992 F.3d 987, 999 (10th Cir. 2021) ("[Smith] allows unnamed members of a class action to be bound, even though they are not parties to the suit."). Under the analysis in *Smith,* as members of the class certified by this Court the Fischers are bound by the Judgment. (Docket No. 275 at 9).

The Fischers also argue the case of *Cecil v. BP Am. Prod.*, 2020 WL 9048653 (E.D. Okla. May 5, 2020) supports their claim that the preclusion issue belongs to the state court. (Docket No. 274 at 10). In that case, two entities filed putative class actions against BP. Cecil filed one in the Eastern District of Oklahoma before Magistrate Judge West, and Chieftain filed one in the Northern District of Oklahoma before Judge Frizell. *Cecil*, 2020 WL 9048653, *1. Judge West approved a class settlement in Cecil's case, which lead to BP filing a Partial Motion for Summary Judgment in the Northern District case, asking Judge Frizzell to rule that the settlement in the Eastern District extinguished Chieftain's claims in his court, since Chieftain was a member of the class approved by Judge West. *Id*. Chieftain, in response sought a stay in the pending Northern

District case and asked Judge West to interpret the terms of the Cecil settlement to determine if Chieftain's claims in the Northern District were released. In her order, Judge West citied *Smith* and noted that "the second subsequent court should be permitted to determine whether a prior judgment has preclusive effect over the claims asserted in the case pending before it." *Cecil*, 2020 WL 9048653 at *2. She then notes that Judge Frizzell has done just that in ruling on BP's Partial Motion for Summary Judgment, "which is both well-supported and well-reasoned." *Id.* She further added "Judge Frizzell was in an equal or better position to [determine] the effect of the Cecil Settlement Agreement and Judgment upon the claims and parties in the *Chieftain* case pending before him [and nothing] in the Settlement Agreement or the Judgment precluded him from doing so." *Id.*

Unlike the present case, Judge Frizzell decided the preclusion issue in a "well-supported and well-reasoned" ruling on the Partial Motion for Summary Judgment. Because of this, Judge West in *Cecil* did not need to "disturb" his ruling. *Cecil*, 2020 WL 9048653 at *2. But here, Judge Parsley did not decide the ultimate issue as to preclusion and instead elected to leave that for the trier of fact at a later date. (Docket No. 262-19 at 2). Judge Parsley also noted that "Defendant may well prevail on certain arguments at a later time", *id.*, indicating that he had not "determined whether the *Chieftain v. XTO* settlement and judgment have a preclusive effect on the Fischers' claims pending before it" as the Fischers argue. (Docket No. 274 at 11).

Federal case law supports Defendants' course in initially asking the state court to decide the scope of the release, and then—after the state court left the issue unresolved—coming to this Court. (Docket No. 275 at 11). In *Amalgamated Sugar v. NL Industries*, 825 F.2d 634, 638 (2nd Cir. 1987), plaintiff filed a motion for summary judgment asking a New Jersey state court to rule that certain claims were precluded by a federal judgment. *Id.* The state court denied the motion and indicated the preclusive effect would be decided at trial. *Id.* Thereafter, Amalgamated asked

the federal court to enjoin the state court from moving forward on the precluded claims. *Id*. The federal court issued the injunction, which was affirmed on appeal. As the Second Circuit explained:

> Amalgamated acted properly in moving for summary judgment on res judicata grounds in the New Jersey Court prior to seeking injunctive relief in the district court, thereby attempting to avoid invoking the more intrusive remedy of injunctive relief.

*Id*. at 642; *see In re Bolar Pharm*., No. MDL 849, 1994 WL 326522, at *1 (E.D. Pa. July 5, 1994) (explaining that "policies of federalism encourage litigants to first pursue a preclusion defense in state court" and that parties "therefore should not be prejudiced for first giving the state court the opportunity to consider their defense," but that—if the state court does not resolve the issue—the federal court can make the decision and enjoin the state court from adjudicating precluded claims); *Battle v. Liberty Nat. Life Ins*., 877 F.2d 877, 883 (11th Cir. 1989) (holding that—because state court denial of summary judgment regarding the preclusive effect of a federal class settlement was not a final decision—the federal court could decide the issue and enjoin the state court from doing so). (Docket No. 275 at 11-12). Here, the state court did not resolve the issue and Defendants properly brought this Motion under the jurisdiction of the underlying judgment and federal precedent.

### III. Conclusion

The Fischers' claims against Exxon Mobil and EMOC are barred by the *Chieftain v. XTO* class action settlement and final judgment, which they chose to not opt out of and from which they accepted substantial settlement benefits. Exxon Mobil and EMOC qualify as "Released Parties" under the Judgment due to their status as predecessors and affiliates of XTO. The claims raised by the Fischers in their revived state court action fall squarely within the broad definition of "Released Claims," which includes underpayment of royalties through deductions and valuation methods—

the same core allegations made here. Contrary to the Fischers' argument, the Oklahoma state court did not resolve the preclusion issue on the merits; its denial of summary judgment was not a final judgment and left the matter for later resolution. Under federal law, this Court retains jurisdiction to interpret and enforce its own final judgment, including through injunctive relief if necessary. Therefore, the Fischers' continued pursuit of released claims in state court violates the Judgment and should be enjoined. Accordingly, Defendants Motion to Enforce the Existing Injection is GRANTED. The Fischers are required to show cause within ten days for their violation of the injunction by pursuing released claims in a state court lawsuit, or in the alternative, agree to abide by the existing injunction set forth in the Order and Judgement (Docket No. 299) and dismiss the Released Claims they are pursuing in state court against the Released Parties. Defendants' request for a new injunction is DENIED at this time.

    IT IS SO ORDERED this 29th day of August, 2025.

_____
D. Edward Snow
United States Magistrate Judge